STOKER, Judge.
This is an appeal by Dorothy Mae Dupuis from a judgment denying a preliminary injunction and dissolving a temporary restraining order which enjoined a sale of seized immovable property.
FACTS AND PROCEEDINGS IN THE DISTRICT COURT
On March 14, 1975, Glenn V. Dupuis and Dorothy Mae Dupuis executed a demand promissory note for $8,000 payable to the order of bearer. This note is paraphed for identification with an act of collateral mortgage dated March 14, 1975, affecting certain immovable property in Calcasieu Parish.
On July 1, 1975, Glenn V. and Dorothy Mae Dupuis executed a demand promissory note for $3,000 payable to the order of bearer and paraphed for identification with an act of collateral mortgage passed that same date. The act of mortgage affected the same immovable property as did the March 14, 1975, mortgage act.[1]
On September 26, 1975, Glenn V. and Dorothy Mae Dupuis executed a promissory note for $11,400 payable to the order of Gulf National Bank at Lake Charles (hereinafter GNB). This note, a “hand note”, is secured by a pledge of the collateral mortgage notes dated March 14, 1975, and July 1, 1975.
On January 24, 1978, Glenn V. Dupuis executed a demand promissory note for $1,000 payable to the order of GNB. This note is paraphed for identification with an act of collateral chattel mortgage affecting a 1973 Chevrolet Fleetside pickup truck.
On August 1,1979, Glenn V. and Dorothy Mae Dupuis executed another hand note, a promissory note for $1,964.16 payable to the order of bearer. This note is secured by a pledge of the collateral mortgage notes dated March 14, 1975, July 1, 1975, and January 24, 1978.
Glenn V. and Dorothy Mae Dupuis fell behind in their payments on the hand notes dated September 26, 1975, and August 1, 1979. On September 22, 1980, GNB filed a petition for executory process seeking to foreclose on the immovable property described in the acts of collateral mortgage dated March 14, 1975, and July 1, 1975, and on the 1973 Chevrolet truck described in the *791 act of collateral chattel mortgage dated January 24, 1978. An order for executory process issued September 22, 1980.
On December 31, 1980, Dorothy Mae Du-puis filed a petition for injunction seeking to enjoin the sale of the immovable property which had been seized under the order of executory process.[2] Dorothy Mae Dupuis alleged that GNB was not entitled to proceed through executory process because of the lack of authentic evidence to support its right to use this process. Specifically in Paragraph 3 of her petition Dorothy Mae Dupuis alleged:
“Plaintiff is not entitled to proceed via executiva because of lack of authentic evidence to support its right to use execu-tory process, in that plaintiff asserts in paragraph 4 of its petition that it is the holder and owner of two mortgage notes originally pledged as security for the notes representing the true indebtedness, namely those notes described in paragraph 3 of the petition, but no authentic evidence of the transfer of the pledged mortgage notes from the pledgors, defendants herein, to the pledgee, plaintiff herein, was submitted by the plaintiff with its petition as required by LSA-CCP Article 2635.”
A temporary restraining order issued December 31, 1980, restraining the Sheriff of Calcasieu Parish from proceeding with the sale of the immovable property.
A hearing on the preliminary injunction was held on January 9, 1981. In oral reasons for judgment given January 14, 1981, the judge denied the preliminary injunction and dissolved the temporary restraining order. Judgment was signed January 20, 1981, denying the preliminary injunction. Dorothy Mae Dupuis appeals that judgment.
ISSUE
The issue presented by the above related facts and proceedings is whether GNB presented the necessary authentic evidence to support its petition for executory process.
ARGUMENTS AND LAW
The appellant, Dorothy Mae Dupuis, contends that certain language contained in the collateral mortgage notes and acts of collateral mortgage makes the mortgages in this case a “hybrid variety separate and distinct from the normal collateral mortgage situation” and that these transactions should be governed by the law of pledge. Appellant argues that because of this language the pledgee (GNB) must show in authentic form how it acquired the collateral mortgage notes. The appellant contends that mere delivery of the notes was inadequate to transfer the notes to the appellee-bank.
Appellant relies on language which was added in typewriting to the printed note forms and mortgage forms. Both of the collateral mortgage notes (March 14, 1975, and July 1, 1975) contain the following sentence typewritten on the face of the note as an addition to the printed form:
“This note is to be pledged as security and shall be enforceable as such.”
The language which was added to each of the collateral mortgage forms appears at the end of the paragraph which states that the note is paraphed ne varietur to identify it with the act of mortgage and delivered to the mortgagee who acknowledges receipt. Appellant in her brief partially quotes the language added to each collateral mortgage form. The portion of the language quoted by appellant reads:
“The said note is intended to be pledged as security and shall be enforceable as such in the manner provided by law; ...”
This language appears in the acts of collateral mortgage dated March 14,1975, and July 1, 1975.
The appellant urges us to hold that through this language the parties agreed that the law of pledge would govern enforcement of the collateral mortgage notes *792 and collateral mortgages. Appellant contends that the applicable law is LSA-C.C. article 3165.[3] Appellant maintains that under this article GNB has two options upon default of the pledgors-debtors (Glenn V. and Dorothy Mae Dupuis). According to appellant, one option available to GNB is to bring an ordinary proceeding against the pledgors-debtors to enforce the pledge. After obtaining a judgment GNB could seize and sell the pledged property (the collateral mortgage notes and mortgages). Under appellant’s argument the second option available to GNB is that of a private or public sale of the pledged collateral mortgage notes and mortgages.[4]
We find appellant’s argument to be without merit. There is no doubt that a collateral mortgage device has aspects of both pledge and mortgage. The collateral mortgage note and act of mortgage are pledged to secure a debt which is usually represented by a hand note. It is essential in constructing a collateral mortgage package that the collateral mortgage note be identified with the act of mortgage. Par-aphing of the collateral mortgage note identifies the note with the act of mortgage. It is our opinion that the language in question was inserted in the collateral mortgage notes and the acts of collateral mortgage to clearly indicate that each note and accompanying mortgage formed a collateral mortgage package and to identify the collateral mortgage note with the corresponding act of collateral mortgage. Appellant only partially quotes the language inserted in the acts of collateral mortgage. The complete language reads:
“The said note is intended to be pledged as security and shall be enforceable as such in the manner provided by law; . . . and on payment of the indebtedness secured thereby may be reissued by Mortgagor without extinguishment, remaining a valid indebtedness in favor of Bearer as collateral security.”
We also feel that the parties to these transactions were attempting by the inserted language to indicate that they were creating collateral mortgages as opposed to ordinary conventional mortgages. While appellant urges us to hold these transactions to be hybrid collateral mortgages governed entirely by the law of pledge, we conclude that the language included in the collateral mortgage notes and acts of mortgage was inserted to clarify that, taken together, each note and act of mortgage with which the note is paraphed for identification comprises a total collateral mortgage package. We cannot subscribe to appellant’s theory that the language in question mandates this court to apply the law of pledge to these collateral mortgage packages.
Having addressed appellant’s argument that the law of pledge governs in this case, we now proceed to the issue of whether GNB is entitled to proceed through execu-tory process. At the heart of this issue is appellant’s contention that GNB failed to produce authentic evidence of the transfer of the collateral mortgage notes from Glenn V. and Dorothy Mae Dupuis to GNB.
LSA-C.C.P. art. 2635 provides:
“The plaintiff shall submit with his petition the authentic evidence necessary to prove his right to use executory process *793 to enforce the mortgage or privilege. These exhibits shall include authentic evidence of:
(1) The note, bond, or other instrument evidencing the obligation secured by the mortgage or privilege;
(2) The authentic act of mortgage or privilege importing a confession of judgment; and
(3) Any judgment, judicial letters, order of court, or authentic act necessary to complete the proof of plaintiff’s right to use executory process.
“This requirement of authentic evidence is relaxed only in those cases, and to the extent, provided by law.”
LSA-C.C.P. art. 2636 provides:
“The following documentary evidence shall be deemed to be authentic for purposes of executory process:
(1) The note, bond, or other instrument evidencing the obligation secured by the mortgage or privilege, paraphed for identification with the act of mortgage or privilege by the notary or other officer before whom it is executed;
(2) A certified copy of an authentic act;
(3) A certified copy of any judgment, judicial letters, or order of court;
(4) A copy of a resolution of the board of directors, or other governing board of a corporation, authorizing the execution of a mortgage on its property, certified in accordance with the provisions of R.S. 13:4103; and
(5) All other documentary evidence recognized by law as authentic.”
GNB attached to its petition for executo-ry process certified copies of the authentic acts of mortgage containing confessions of judgment and the notes paraphed ne varie-tur by the notary for identification with each act of mortgage. Additional attachments included an affidavit of indebtedness and the two hand notes executed by Glenn V. and Dorothy Mae Dupuis.
The appellant contends that GNB is required to present authentic evidence of its “acquisition of title” of the collateral mortgage notes. The collateral mortgage notes dated March 14, 1975, and July 1, 1975, are both payable to the order of bearer. A promissory note payable to the order of bearer and secured by a mortgage may be transferred by mere delivery. Authentic evidence of the transfer of the note is not necessary to enable the holder to foreclose by executory process. See First National Bank of Lafayette v. Gaddis, 250 So.2d 504 (La.App. 3rd Cir. 1971) and the cases cited therein. GNB submitted with its petition the necessary authentic evidence establishing its right to use executory process to enforce the collateral mortgages.
For the above and foregoing reasons the judgment appealed from is affirmed. Costs of this appeal to be borne by appellant, Dorothy Mae Dupuis.
AFFIRMED.

. The immovable property is described in both acts of mortgage as:

"Tract I:

Lot Eleven (11) of Block Four (4) of the PHILLIP ABATE SUBDIVISION of the South Half of the South Half of the South Half of the Northwest Quarter of Section 29, Township 10 South, Range 8 West, as per plat recorded in Plat Book 9 at Page 89 of the records of Calca-sieu Parish, together with all buildings and other improvements situated thereon.

“Tract IT.

Commencing at the Southeast Comer of Lot Eleven (11) of Block Four (4) of the PHILLIP ABATE SUBDIVISION as per plat recorded in Plat Book 9 at Page 89 of the records of Calca-sieu Parish, thence East, to the West line of the Walker property; thence North 135 feet; thence West, to the Northeast Comer of Lot 11 of Block 4; thence South 135 feet to the point of commencement, together with all buildings and other improvements situated thereon.”

. Dorothy Mae Dupuis does not seek to enjoin the sale of the seized Chevrolet truck which is subject to the collateral chattel mortgage executed by Glenn V. Dupuis on January 24, 1978.

. LSA-C.C. article 3165 provides:
“The creditor cannot, in case of failure of payment, dispose of the pledge; but when there have been pledges of stock, bonds or other property, for the payment of any debt or obligation, it shall be necessary before such stocks, bonds or other property so pledged shall be sold for the payment of the debt, for which such pledge was made, that the holder of such pledge be compelled to obtain a judgment in the ordinary course of law, and the same formalities in all respects shall be observed in the sale of property so pledged as in ordinary cases; but in all pledges of movable property, or rights, or credits, stocks, bonds or other movable property, it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged, in such manner as may be agreed upon by the parties without the intervention of courts of justice; provided, that all existing pledges shall remain in force and be subject to the provisions of this act.”

. We do not intend by our recitation of appellant’s arguments to indicate that we agree with her contention that these are the only options available to GNB under the law of pledge.