250 So.2d 504 (1971)
The FIRST NATIONAL BANK OF LAFAYETTE, Plaintiff-Appellee,
v.
Irene Hines GADDIS, Defendant-Appellee,
Wilmer C. Goss, Jr., and WCG Investment Corporation, Intervenors-Appellants.
No. 3510.
Court of Appeal of Louisiana, Third Circuit.
July 13, 1971.
*506 Robert Dragon, Jr., of Dragon & Kellner, Lafayette, for defendant-appellants.
Bean & Rush, by Warren D. Rush, Lafayette, for plaintiff-appellee.
Before FRUGÉ, SAVOY and HOOD, JJ.
HOOD, Judge.
The First National Bank of Lafayette instituted this action against Irene Hines Gaddis to foreclose by executory process on a real estate mortgage executed by defendant. Wilmer C. Goss, Jr., filed an intervention seeking to enjoin the sale of the property on several grounds, and upon his demand a temporary restraining order was issued by the trial court prohibiting the sale. WCG Investment Corporation was later substituted for Wilmer C. Goss, Jr., as intervenor.
Plaintiff, First National Bank, then filed an exception of no right or cause of action to the petition of intervention and a motion to set aside the temporary restraining order. In its motion to set aside the restraining order, plaintiff also demanded judgment for damages, costs and attorney's fees for the wrongful issuance of that order.
After trial, judgment was rendered by the trial court: (1) Dissolving the temporary restraining order; (2) condemning Goss to pay plaintiff $200.00 as attorney's fees for the wrongful issuance of that order; (3) sustaining the exception of no right or cause of action filed by the bank against intervenor Goss; (4) rejecting the demands of WCG Investment Corporation for a preliminary injunction; and (5) condemning intervenor Goss to reimburse plaintiff the costs incurred by it in preparing documents which intervenor had requested by means of a subpoena duces tecum. Wilmer C. Goss, Jr., and WCG Investment Corporation have appealed.
Appellants contend that the trial court erred in the following particulars: (1) In failing to hold that intervenors could rely on the public records which indicated that the promissory note secured by the mortgage on which this foreclosure proceeding is based had prescribed; (2) in giving effect to a waiver of prescription which was signed by the maker of the mortgage note; (3) in failing to hold that plaintiff is barred from proceeding by executory process *507 because of the lack of authentic proof showing the relationship of the mortgage note to certain other notes made by defendant payable to the bank; (4) in holding that the mortgage note sued upon is the note described in the act of mortgage; and (5) in condemning intervenor Goss to pay court costs and attorney's fees.
On October 9, 1961, defendant Gaddis executed a promissory note for the principal sum of $2,000.00, made payable on demand to the order of "Myself," and endorsed in blank by the maker. This note was paraphed for identification with an act of mortgage executed by the maker on the same date, affecting the tract of land in Lafayette Parish which plaintiff seeks to have seized and sold by executory process. The note was used by the maker, Mrs. Gaddis, as collateral security for a loan which was made to her by the First National Bank at about the time the mortgage was executed.
When the above mentioned mortgage note was executed, Mrs. Gaddis owed the bank the principal sum of $3,250.00. Her actual indebtedness was evidenced by a "hand note" for that amount, made payable to the order of the bank. On the back of that hand note there appeared a statement to the effect that the maker, Mrs. Gaddis, had pledged certain assets to secure the payment of the note, and one of the assets so pledged was the above described $2,000.00 collateral mortgage note.
Payments were made periodically on Mrs. Gaddis' indebtedness to the bank, and from time to time renewal hand notes were executed by her for the amount of her remaining indebtedness to plaintiff. On the back of each such renewal hand note there appeared a statement, signed by Mrs. Gaddis, that the maker pledged the above mentioned $2,000.00 mortgage note, and other assets, to secure the payment of the indebtedness which was evidenced by the hand note. The bank has retained the $2,000.00 mortgage note in its possession continuously since it was first pledged as security for defendant's indebtedness, because Mrs. Gaddis has never fully paid or extinguished her debt to the bank, and the mortgage note has been pledged to secure her indebtedness continuously since it was executed in 1961. Mrs. Gaddis now owes the bank $1,749.31. Her debt to the bank has never been reduced to a figure less than that amount since the 1961 mortgage note was first pledged to plaintiff.
On March 3, 1965, Mrs. Gaddis sold all of the property described in the above mentioned mortgage to Wilmer C. Goss, Jr. The purchaser in that sale paid a part of the purchase price in cash, and to evidence his indebtedness for the balance due, Goss executed a promissory note made payable to the order of Mrs. Gaddis for $1500.00. That note was secured by a vendor's lien affecting the property which Goss had just acquired from defendant, that being the same property which Mrs. Gaddis previously had mortgaged in 1961 to secure the $2,000.00 collateral note.
On March 11, 1965, Mrs. Gaddis signed a statement on the back of the above mentioned $2,000.00 collateral mortgage note, by which statement she acknowledged and agreed to pay the indebtedness evidenced by that note, and she specifically waived prescription, without novation.
Wilmer C. Goss, Jr., sold the same property to WCG Investment Corporation by deed dated February 17, 1966. The evidence shows, however, that the vendee corporation was wholly owned by Wilmer C. Goss, Jr., and his wife, and that Goss is President of it. Goss testified that "I act as the corporation."
The last hand note which was executed by Mrs. Gaddis, made payable to the order of the bank, is for $2,378.82, and is dated November 3, 1968. By a statement appearing on the back of that note, Mrs. Gaddis specifically pledged as security for it three collateral notes, one of which is the $2,000.00 mortgage note which was executed by Mrs. Gaddis in 1961. Another note pledged to secure that hand note is the $1500.00 note *508 which was signed by W. C. Goss, Jr., on March 3, 1965, and secured by a vendor's lien of the same property.
Intervenor Goss eventually paid this $1500.00 note, and from that payment $629.51 went to the First National Bank and was applied as a credit on Mrs. Gaddis' indebtedness to that bank. That is the only payment of principal which has been applied on defendant's indebtedness to the bank since November 3, 1968, and after crediting it to the $2,378.82 hand note executed by Mrs. Gaddis on that date, it leaves a balance of $1,749.31 due by defendant, that being the amount claimed by plaintiff in this proceeding.
Intervenors concede that when Goss purchased the property from Mrs. Gaddis on March 3, 1965, and when he sold it to WCG Investment Corporation on February 17, 1966, the public records showed that the property was encumbered by the mortgage which defendant had executed in 1961. They point out, however, that the recorded mortgage showed that the note which it secured was a demand note which ordinarily would prescribe in five years after the date of the note, or on October 9, 1966. And, they contend that Goss had the right to rely on the fact that the note would prescribe on that date, since "no act was ever recorded which would place innocent third parties on notice of a waiver of prescription on the part of Irene Hines Gaddis." Their argument is that when WCG Investment Corporation bought the property on February 17, 1966, the mortgage records indicated that the demand note, secured by the $2,000.00 mortgage, would prescribe in less than eight months after that sale was completed, and that the corporation had the right to rely on the fact that it would prescribe in that time, unless public notice of some kind was given that the running of prescription had been interrupted.
We find no merit to this argument. The maker of a promissory note may interrupt the running of prescription on that note in several ways, some of which are by acknowledging the indebtedness, by promising to pay it or by making a payment on the note. Prescription may be interrupted even by an oral acknowledgment of the debt or by a verbal promise to pay it. We have been referred to no authorities which provide that an act purporting to waive or interrupt prescription on a note, or purporting to show that a payment was made on it or that it had been acknowledged in any way, must be recorded in the public records in order to preserve as against third parties the mortgage which secures that note.
Our conclusion is that the waiver signed by Mrs. Gaddis on March 11, 1965, had the effect of interrupting the running of prescription on the note, and that it was unnecessary that that waiver be recorded in the public records, or that notice of the waiver be given to any third party, in order to preserve the rights of the holder of the note to foreclose on the mortgage which secured it. Under the circumstances presented here, neither of the intervenors had the right to rely on the fact that the note would prescribe at any particular time.
Intervenors contend further that the waiver of prescription which was signed by Mrs. Gaddis on March 11, 1965, did not extend the effect of the recordation of the mortgage securing that note beyond the date on which the note otherwise would have prescribed, because the waiver was signed after Mrs. Gaddis had sold the property covered by the mortgage. They point out that the property was sold to Goss on March 3, that the deed was recorded on March 10, 1965, and that the waiver was signed by Mrs. Gaddis on March 11.
We think it is immaterial to any of the issues presented here whether Mrs. Gaddis executed the waiver of prescription before or after she sold the mortgaged property to intervenor. The mortgage was recorded prior to the time the property was sold to Goss or to WCG Investment Corporation, and the purchasers thus had notice of the fact that the land was encumbered with *509 such a mortgage. The waiver which was signed by Mrs. Gaddis interrupted the running of prescription on the note, and we have already held that it was unnecessary for such a waiver to be recorded in order to preserve the rights of the holder of the note against claims of third parties. Our conclusion is that the waiver is effective, and that the note continues to be secured by the mortgage, even though the maker had previously sold the property affected by that mortgage. The holder of the note has the same right to foreclose on the mortgaged property as it would have had in the event the waiver had been executed before any of the mortgaged property was sold.
Intervenors contend next that plaintiff is barred from foreclosing by executory process, because it has failed to produce evidence, in the form of an authentic act, establishing the relationship between the hand note executed by defendant on November 3, 1968, and the $2,000.00 mortgage note on which this foreclosure proceeding is based.
Plaintiff alleged in its original petition that it is the holder of the "hand note" dated November 3, 1968, and the mortgage note dated October 9, 1961, both of which notes were attached to the petition. At the trial, plaintiff introduced copies of a number of other "hand notes" which had been executed by Mrs. Gaddis, payable to plaintiff bank, between 1961 and 1968. The copies of these notes were produced primarily in response to a subpoena duces tecum issued at the request of intervenors. They show, however, that Mrs. Gaddis was indebted to plaintiff bank continuously from 1961 until the present time for sums equal to or in excess of the amount which she now owes. The notes which she signed during those years, made payable to the bank, were renewals of older hand notes, and they showed a continuing and unpaid indebtedness to the bank during all of that time.
The act of mortgage which was signed by Mrs. Gaddis, and which secures the $2,000.00 note sued upon here, is in authentic form and it contains a confession of judgment. No authentic act was ever executed showing the relationship between any of these hand notes and the 1961 mortgage note, or showing a transfer or assignment of any such note. Intervenors argue that evidence in authentic form must be produced by plaintiff to show the relationship between the debt represented by the hand note and the debt evidenced by the mortgage note.
Executory process is a harsh remedy, and it can be used only in instances where it is specifically permitted by law. When it is authorized, the party using it must strictly comply with the letter of the law governing this severe remedy. Myrtle Grove Packing Company v. Mones, 226 La. 287, 76 So.2d 305 (1954). Our Supreme Court has held that "Every muniment of title to the note and mortgage, and every link of evidence, must be in authentic form when executory process is sought." Miller, Lyon & Co. v. Cappel and Curry, 36 La. Ann. 264.
We have examined the notes and the mortgage involved here with these rules in mind, and have concluded that no further authentic proof is needed in order for plaintiff to foreclose by executory process.
Article 2635 of the Louisiana Code of Civil Procedure, that being the article on which intervenors principally rely, provides that "The plaintiff shall submit with his petition the authentic evidence necessary to prove his right to use executory process to enforce the mortgage or privilege." In comment (d) under that article it is stated that "Of course, if the mortgage note is made payable to the order of the mortgagor and by him endorsed in blank, and the act of mortgage so recites, no authentic evidence of the transfer by the mortgagee is required." In the instant suit the mortgage note was made payable to the order of the mortgagor and was by her endorsed in blank, and the mortgage so recites. The note was legally transferred to *510 plaintiff bank shortly after it was executed, and plaintiff has been the holder of that note continuously since that time. It appears from the above cited article of the Code of Civil Procedure, and the comment relating to that article, that no authentic proof, other than the act of mortgage itself, is needed to show the endorsement or transfer of the note and thus to entitle the holder to use executory process.
The case of Li Rocchi v. Keen, 242 La. 111, 134 So.2d 893 (1961), involved a foreclosure by executory process on three mortgage notes made payable to the order of "Ourselves" and endorsed in blank by the makers and mortgagors. The act of mortgage securing the debt correctly described the notes, except that it did not recite that the notes were endorsed in blank by the makers. There was no authentic proof that the notes had been endorsed. Our Supreme Court held that "delivery of the endorsed in blank notes to the mortgagees as owners thereof" was sufficient, and that plaintiffs were entitled to foreclose by executory process in spite of the fact that no authentic proof was presented to show the endorsement of the notes by the makers.
Since the mortgage note involved in the instant suit was payable to the order of "Myself," and was endorsed in blank by the maker, the law considers it as being payable to bearer and transferable by mere delivery. LSA-R.S. 7:9 and 30; Williams v. Alphonse Mortgage Company, 144 So.2d 600 (La.App. 4 Cir. 1962). Our law is settled that a promissory note payable to bearer and secured by a mortgage, may be transferred by mere delivery, and authentic evidence of the endorsement or transfer of the note is not necessary to enable the holder to foreclose by executory process. Ford Motor Credit Co. v. Williams, 225 So.2d 717 (La.App. 1 Cir. 1969); General Contract Purchase Corp. v. Doyle, 56 So.2d 432 (La.App. Orl.Cir. 1952); Catalanotto v. Associates Discount, 207 So. 2d 180 (La.App. 1 Cir. 1968).
The transfer or delivery of a "bearer" note to a pledgee is the only formality required for the pledge of such a note. The pledgee of a bearer note, therefore, becomes the holder of that note when it is delivered to him, and he may enforce payment of it as can any other holder. Baker Bank & Trust Co. v. Behrnes, 217 So.2d 461 (La.App. 1 Cir. 1968).
In the present case, we think plaintiff became the holder of the $2,000.00 mortgage note when that note was delivered to the bank, even though it was delivered as a pledge to secure a hand note. Since the bank did become the holder, it has the right to foreclose on the pledged note just as any other holder might do.
The fact that plaintiff also holds a hand note, signed by defendant and showing the amount of her actual indebtedness to the bank, does not prevent plaintiff from foreclosing on the mortgage note which was pledged to secure the hand note. We hold that it is not necessary for plaintiff to produce authentic proof establishing the relationship of any of the above mentioned hand notes to the mortgage note on which this foreclosure proceeding is based.
Intervenors further challenge the right of plaintiff to foreclose by executory process on the ground that the note on which this foreclosure proceeding is based is not the one which is described in the act of mortgage which purportedly secures it. The note on which this proceeding is based is signed by Mrs. Gaddis, it is made payable to the order of "Myself," and it is endorsed in blank by the maker. It, of course, is paraphed for identification with an act of mortgage importing a confession of judgment, executed in authentic form by the maker before the same notary on the same day. The description of the note, as it appears in the act of mortgage, is accurate *511 in every respect, except that it is described as having been drawn to the order of "* * * Herself and by her endorsed in blank. * * *" The argument is that the mortgage describes a note made payable to "Herself," whereas the note sued upon is payable to "Myself." We have emphasized these words by enclosing them in quotation marks. No such marks were used in the act of mortgage, however, and it appears clear to us that the act of mortgage accurately describes a note made payable to the order of the maker and endorsed by her in blank. We think the note on which this suit is based is adequately described in the act of mortgage.
Intervenor Goss contends, finally, that he was unjustly cast for attorney's fees and for the costs incurred by plaintiff in preparing documents which had been requested by said intervenor through a subpoena duces tecum. Goss concedes that he initially filed the intervention in his own name, that he obtained the temporary restraining order, that he requested the subpoena duces tecum, and that WCG Investment Corporation was not substituted as intervenor in his stead until April 3, 1970, which was the date of the trial. He states, however, that he "inadvertently instituted this intervention in his own name," and he argues that since the corporation ultimately was substituted in his stead and made the same request, it should have been cast for these costs. We do not agree. Mr. Goss, individually, obtained the restraining order and demanded that copies of the documents be prepared by plaintiff and the corporation was not substituted as intervenor until after the sale had been restrained and the copies were made. We find no error in the judgment of the trial court assessing these costs to Goss instead of to the corporation.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to intervenors-appellants.
Affirmed.