415 So.2d 414 (1982)
TERREBONNE BANK & TRUST COMPANY
v.
William R. G. SMITH, Katherine Brunet Smith, Prentice L. G. Smith, Jr., Patricia Robison Smith and Gerald J. Beauregard.
No. 14780.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
*415 Edward James Gaidry, Houma, for plaintiff and appellee.
Thomas D. Benoit, Baker, La., for defendants and appellants Prentice L. G. Smith, Jr. and Patricia Robinson Smith.
Before ELLIS, PONDER and SAVOIE, JJ.
ELLIS, Judge.
The original petition herein was filed by Terrebonne Bank & Trust Company against William R. G. Smith and Katherine Brunet Smith, husband and wife; Prentice L. G. Smith, Jr. and Patricia Robison Smith, husband and wife; and Gerald J. Beauregard, alleging a debt of $166,078.29, plus 18% interest and 20% attorney's fees, due by William R. G. Smith, Prentice L. G. Smith, Jr., and Beauregard. The petition further alleges that plaintiff is the holder of a promissory note, dated June 2, 1980, drawn by the two Messrs. Smith and Mr. Beauregard, in the original sum of $166,672.99, payable to the order of plaintiff in 26 monthly installments of $3,209.33, plus a final installment of the entire balance due. The note is alleged to contain an acceleration clause.
It is alleged that, in order to secure the above indebtedness, defendants "gave and delivered" to plaintiff 1,000 shares of stock in South Central Foods, Inc.; a demand collateral mortgage note for $30,000.00, dated May 22, 1980, drawn by Prentice L. G. Smith, Jr. and Patricia R. Smith; a second demand collateral mortgage note for $30,000.00, also dated May 22, 1980 and drawn by the same parties; a third demand collateral mortgage note, for $17,000.00, dated September 10, 1979, drawn by William Rushing Griffith Smith and Katherine Brunet Smith; and a certificate of deposit *416 for $50,000.00, dated September 4, 1979, issued in the name of Prentice L. G. Smith, Jr. It is further alleged that the defendants executed continuing guaranties, which further pledged the above described stocks, notes and certificate as security for the said loan.
Petitioner then prayed that executory process issue as to the properties covered by the collateral mortgages, and that the pledge of the other items given as security be recognized and maintained. It is also prayed that the proceeds of the sale be applied to the indebtedness represented by the primary note with interest and attorney's fees, as above set forth.
An affidavit attached to the petition, states the balance due to be as alleged in the petition, and that nothing had been paid thereon since September 22, 1980. The petition does not allege that the mortgages securing the collateral notes contain confessions of judgment.
Pleadings entitled "Written Motion for Hearing" were filed on behalf of three of the four Smiths. Shortly thereafter, all four Smiths filed petitions for injunction to stop the sale of the mortgaged properties, alleging that the suit was premature; that the suit improperly cumulates an executory proceeding with an action via ordinaria for the recognition of the pledge of the stock and the certificate of deposit; that the interest rate is misstated in the petition; that the petition does not allege that the mortgages contain confessions of judgment; that there is not sufficient authentic evidence to support executory process, in that the pledge of the collateral mortgage notes is not in authentic form; and that there is a discrepancy as to attorney's fees.
After the petitions for injunction were filed, but before a hearing thereon, plaintiff amended its petition so as to allege the interest rate on the hand note to be two percent over prime as determined by Chase Manhattan Bank of New York, with a minimum rate of 12% and a maximum of 18%. The petition was further amended to incorporate therein the three collateral mortgages, and to allege them to be in authentic form and to contain confessions of judgment. The petition was further amended to pray for a writ of seizure and sale to seize and sell the properties, with appraisement, "said seizure and sale to be to the full extent of the mortgage and mortgage note obligations as reflected by the said act of mortgages attached hereto and made a part hereof." That part of the petition asking for recognition of the pledge of the stock and certificate of deposit was eliminated.
The prayer is for the issuance of a writ of seizure and sale as prayed for to satisfy the indebtedness represented by the hand note, with interest and attorney's fees.
After the amended petition was filed, the Prentice L. G. Smiths filed exceptions of improper cumulation of actions, directed at the original petition.
After a hearing on all matters judgment was signed overruling the exception of improper cumulation of actions, and denying the preliminary injunctions sought by the Smiths. From this judgment Prentice L. G. Smith, Jr. and Patricia Robison Smith have appealed.
In this court, it is alleged that the trial court erred in overruling the exception of improper cumulation of actions; in permitting the filing of the supplemental petition; in finding that there was sufficient authentic evidence to support executory process; and in failing to find the suit to be premature.
Turning first to the claim of prematurity, we find it to be based on testimony that Prentice and William Smith had an agreement with the bank that the hand note would not have to be paid according to its terms. It was testified that negotiations relative to payment of the note were in a "work-out" stage, during which the bank would not demand payment. However, it further appears that, although the bank did agree to one 90-day moratorium on payment of principal, no further agreement was made, and, for over six months after the moratorium expired, no payments of any kind were made. In about January, 1981, there were discussions relative to the *417 furnishing of additional collateral. This collateral was not forthcoming and the bank instituted this proceeding in March, 1981. The trial judge found there was no agreement which precluded the bank from demanding payment of the full obligation. We find this conclusion to be supported fully by the evidence.
Appellants further argue that the trial judge erred in permitting the filing of the amended petition. It is clear that the original petition improperly cumulated an ordinary proceeding with an executory proceeding since these actions do not employ the same mode of procedure. Article 463, Code of Civil Procedure, and comments thereto.
An improper cumulation of actions may be cured by either ordering separate trials of the actions, or ordering the plaintiff to elect which actions he will pursue, and to amend his petitions so as to delete the other actions cumulated therewith. Article 464, Code of Civil Procedure. Had plaintiff not voluntarily amended his original petition so as to remove the ordinary proceeding therefrom, the exception filed by appellants thereafter would have been valid, because the suit was not entirely one via executiva. In that case, the court could have ordered plaintiff to do what it did voluntarily, that is, to elect which part of its action to proceed with, and to amend its petition accordingly. We therefore see no objection to the amendment of the petition.
Appellants argue that the amendment had the effect of converting an ordinary proceeding to an executory proceeding, which is expressly prohibited by Article 2644 of the Code of Civil Procedure. We cannot agree. Plaintiff's original petition was improper for the reasons outlined above, but we have found he has the right to elect which action to pursue.
It follows that, once plaintiff has elected to proceed with the action via executiva, the exception of improper cumulation of actions, filed by appellants, was no longer a proper pleading under Article 2642 of the Code of Civil Procedure, which provides that a defendant may assert his defenses only through an injunction proceeding, by a suspensive appeal, or both.
In this case, appellants sought to enjoin the proceeding by filing a petition for an injunction, based on lack of authentic evidence and prematurity. The question of prematurity has already been disposed of above. In this court appellants claim that authentic evidence is lacking in three respects. First, it is claimed that there is no authentic evidence to show the pledge of the collateral mortgage notes to secure the debt. The record shows that the collateral mortgage notes are made payable to "Ourselves", and are signed and endorsed in blank by appellants.
Article 2635 of the Code of Civil Procedure provides as follows:
"The plaintiff shall submit with his petition the authentic evidence necessary to prove his right to use executory process to enforce the mortgage or privilege. These exhibits shall include authentic evidence of:
"(1) The note, bond, or other instrument evidencing the obligation secured by the mortgage or privilege;
"(2) The authentic act of mortgage or privilege importing a confession of judgment; and
"(3) Any judgment, judicial letters, order of court, or authentic act necessary to complete the proof of plaintiff's right to use executory process.
"This requirement of authentic evidence is relaxed only in those cases, and to the extent, provided by law. A variance between the recitals of the note and of the mortgage regarding the obligation to pay attorney's fees shall not preclude the use of executory process."
It is settled law that a collateral mortgage note is the note evidencing the obligation, and that a bearer note, such as in this case, which is negotiable by delivery, may be transferred with no formality other than delivery. A pledgee to whom such a note is delivered becomes the holder thereof and may enforce payment. Slidell Building Sup., Inc. v. I.D.S. Mortgage Corp., 273 *418 So.2d 343 (La.App. 1st Cir. 1972), writ denied 274 So.2d 708 (La.1973); First National Bank of Lafayette v. Gaddis, 250 So.2d 504 (La.App. 3rd Cir. 1971).
Appellants next complain that there is no authentic evidence of claimed interest. The hand note herein, which is appellants' principal obligation to plaintiff, provides for an interest rate of "2% over prime as determined by the Chase Manhattan Bank of New York, Min. 12% Max; 18%." The collateral mortgage notes provide for interest at the rate of 12% per annum. The petition, as amended, prays that the properties be sold, with appraisement, and that the proceeds of the sale, "to the extent of said mortgage and mortgage notes" be applied to the payment of the principal obligation. Both of the collateral mortgage notes are for $30,000.00. Appellants claim that extrinsic evidence of the prime rate as determined by Chase Manhattan Bank must be introduced in order to define the full extent of the obligation under the hand note, and that there is therefore no authentic evidence as to the main obligation. We cannot agree.
As pointed out above, the collateral mortgage note is the note evidencing the obligation secured. Variances between the collateral note and the hand note are common, and do not affect the right of the holder of the collateral note from proceeding with executory process. Citizen's Finance Service, Etc. v. Hollier, 398 So.2d 582 (La.App. 1st Cir. 1980). The collateral mortgage can be enforced only to the limit of its own terms, and that is what is prayed for in this suit. See Nathan and Marshall, The Collateral Mortgage, 33 La.L.Rev. 497 (1973); Nathan and Marshall, The Collateral Mortgage: A Reassessment and Postscript, 36 La.L.Rev. 973 (1976).
Finally, appellants claim there is a variance, and therefore a lack of authentic evidence, between the attorney's fees expressed in the collateral notes and collateral mortgages. The notes provide for "an attorney's fees of $50.00 minimum or 25% of the total due...." The collateral mortgages provide that "said attorney's fees to be fixed at twenty-five (25%) percent on the amount due or in suit." The only discrepancy is that the note provides for a minimum fee of $50.00. We do not find that this constitutes a sufficient variance to preclude the use of executory process.
The judgment appealed from is therefore affirmed, at appellants' cost.
AFFIRMED.