440 So.2d 173 (1983)
PLUMBING SUPPLY HOUSE, INC.
v.
CENTURY NATIONAL BANK.
CENTURY NATIONAL BANK
v.
PLUMBING SUPPLY HOUSE, INC.
Nos. C A 0363, C A 0574.
Court of Appeal of Louisiana, Fourth Circuit.
October 6, 1983.
Rehearing Denied November 22, 1983.
Writs Denied January 27, 1984.
*174 Kehl, Pickering, Cotogno & Delsa, Kenneth E. Pickering, Claudia Sue Dunn, New Orleans, for defendant-appellee.
Leefe & Roniger, Guy L. Leefe, New Orleans, for plaintiff-appellant.
Before GARRISON, BYRNES and WILLIAMS, JJ.
BYRNES, Judge.
This is a consolidated appeal arising out of foreclosure proceedings instituted by appellee, Century National Bank (hereinafter CNB), against Plumbing Supply House Inc. (hereinafter PSH), and its owners Mr. and Mrs. Milton H. Girard.
On January 24, 1978 PSH executed a promissory note in favor of CNB in the amount of $250,000.00, payable on demand. In order to secure this note PSH executed the following documents; a collateral chattel *175 mortgage on its inventory, a ne varietur note for $225,000.00, a collateral pledge agreement pledging the ne varietur note to CNB, and an assignment of its accounts receivable to CNB.
In early 1979 CNB informed Mr. Girard, president of PSH, that the outstanding balance on the loan had to be reduced. To obtain the necessary funds Mr. Girard arranged for a loan to the corporation by Walter Heller & Co. This loan was conditioned on the assignment to Heller of the accounts receivable which had previously been assigned to CNB. To obtain their release Girard agreed that PSH would reduce the outstanding balance on its note by $65,000.00. He further agreed to arrange for the pledge of a collateral mortgage on his home by PSH as additional security for the debt of the corporation.
On April 26, 1979 Mr. & Mrs. Girard met with Dale Black, president of CNB, in the office of Lee Miller Jr., the bank's attorney to perfect the collateral mortgage and pledge. The Girards executed a collateral mortgage and ne varietur note on their home, an hypothecation agreement authorizing PSH to pledge the ne varietur note as security for PSH's $225,000.00 hand note, and a collateral pledge agreement. A notation was made on the back of PSH's $225,000.00 hand note to the effect that a collateral mortgage on the Girard house had been pledged as additional security on the note. There was a space below that notation for Mr. Girard, as president of PSH, to sign, but no signature appears.
In September 1979 PSH failed to pay a principal reduction of $25,000.00 which was due on the 30th of that month. On October 17, 1979 PSH paid $15,000.00 of this amount but on October 25, 1979 CNB matured the collateral mortgage note and proceeded to foreclose on the inventory by executory process.
The inventory was sold at a Sheriff's sale on March 31, 1980 but did not generate sufficient funds to satisfy the debt owed to CNB. PSH did not seek to enjoin this sale or take a suspensive appeal under C.C.P. Art. 2642. Instead they chose to file a suit for damages against CNB alleging that the bank breached its fidicuary obligation as pledge of the inventory by instituting foreclosure on the basis of unsubstantiated rumors that PSH was liquidating its inventory below cost and concealing the profits from CNB.
During the pendency of this suit CNB moved to foreclose on the Girard's home, which they alleged had been pledged as additional security on PSH's debt. The Girards intervened and obtained a temporary restraining order forbidding the sale. CNB then moved for summary judgment and filed an exception of no cause or no right of action to PSH's damage suit. The trial judge granted the motion for summary judgment, maintained the exception of no right of action and dismissed the suit. The court also denied the Girard's request for a permanent injunction.

THE PLEDGE OF THE HOUSE
On appeal the Girards contend that no valid pledge of the collateral mortgage on their home was made by PSH. Their version of the facts is that during the April 26 meeting Mrs. Girard inquired as to the effect of the document she was signing and, upon discovering that her home was to be pledged to secure the debts of the corporation, she objected and refused to proceed further.
In support of their position the Girards assert that the collateral pledge agreement which they signed was intended to secure their personal indebtness to the bank and not the debts of the corporation. However, no evidence of a personal debt owed by the Girards to CNB was introduced at trial. They contend that their actions after Mrs. Girard's objections show a lack of intent to pledge their house. They further argue that the absence of Mr. Girard's signature of the back of the hand note where the additional security of the Girard's house is noted proves that Mr. Girard, as president of the corporation, never pledged that security. We disagree.
*176 As to the collateral pledge agreement we note that while this document may be evidence of an intent to pledge it is not necessary to perfect a pledge of the type involved in this case. The pledge here was of a ne varietur collateral mortgage note in bearer form. To pledge such a negotiable instrument no written agreement or other formality beyond delivery to the pledge is required. CC Art. 3158, Terrebonne Bank and Trust Co. v. Smith, 415 So.2d 414 (La. App. 1st Cir.1982), First National Bank of Lafayette v. Gaddis, 250 So.2d 504 (La.App. 3rd Cir.1971), American Bank and Trust Co. v. Straughn, 248 So.2d 73 (La.App. 1st Cir. 1971).
Appellants are correct in observing that intent to pledge must also be shown for the contract of pledge to be complete. They argue that the circumstances surrounding the transaction do not show such an intent. The trial court found that there was a meeting of the minds between the parties as to the pledge of the Girard's house. He based his finding on an evaluation of the testimony of the witnesses to the notarial act which created the collateral mortgage and the subsequent actions of the parties.
The notary who prepared the documents, the president of the bank, and the witnesses to the act all testified that no objection to the proceedings was raised at any time by either Mr. or Mrs. Girard. This testimony was of course contradicted by that of the Girards. However, the circumstances of the case indicate to this court, as they did to the trial court, that a pledge was intended and perfected.
Although the Girards argue that they did not intend to pledge their house to CNB they allowed the fully executed documents perfecting that pledge to remain in the bank's possession even after they allegedly made it known that they did not want to pledge the house. No attempt was made to cancel or regain these documents until the bank initiated foreclosure proceedings. Moreover, the hypothecation agreement which authorized PSH to pledge the collateral mortgage note on the house contained a provision which provided for revocation of the corporation's authority to pledge upon written notice by the Girards to the bank. No such notice was ever given.
In addition Mr. Miller sent the Girards a bill for his services in preparing the collateral mortgage as well as a copy of the mortgage and pertinent information concerning its recordation of behalf of the bank. The Girards paid this bill without objection. Moreover, when the Girards transferred the property to a trust for their grandchildren the collateral mortgage in favor of CNB was listed as an outstanding encumbrance. The Girards did not contact the bank or Mr. Miller to ascertain why an encumbrance which they contend was invalid was so recorded.
Appellant attaches great significance to the fact that Mr. Girard never endorsed the back of the $225,000.00 hand note after the pledge of the Girard's house as additional security was noted on the back. However, we have found no law which requires this endorsement to establish CNB's right to executory process. Its absence seems relevant only to the issue of intent to pledge.
The trial judge concluded that, under the circumstances of this case, the Girards had failed to establish the absence on an intent to pledge their home. We agree.
The Girards also contend that, assuming the existence of a pledge, the evidence of that pledge was insufficient to support executory process. We find this contention to be without merit.
A promissory note secured by a collateral mortgage and payable to bearer may be pledged by mere delivery. No authentic evidence of endorsement or transfer is required to entitle the transferee to foreclose by executory process. Terrebonne Bank and Trust Co. v. Smith, supra. First National Bank of Lafayette v. Gaddis, supra.
Because no authentic evidence of the pledge of this ne varietur bearer note is required, the delivery of that note by the Girards to CNB and CNB's continued possession of that note until foreclosure was *177 instituted was sufficient to support executory process.
Appellant's contention that CNB did not allege the existence of a pledge of the collateral mortgage note on the Girard home in its petition for executory process is not supported by the record. We have reviewed that petition and find that it includes allegations of a pledge of the house for the debts of PSH.

THE DAMAGE SUIT
We next address the dismissal of PSH's damage suit. The basis for this suit was the allegation that CNB breached its pledge agreement by precipitously foreclosing on PSH's inventory based on unsubstantiated rumors of covert liquidation and concealment of profits without first making demand on PSH and allowing it 24 hours to post additional security. We find this contention to be without merit.
The petition for executory process filed by CNB reveals that a late payment by PSH was the primary reason for the foreclosure and not the rumors alleged by the Girards. A reading of the collateral pledge agreement reveals that, contrary to the allegations of the Girard's petition, CNB was given the option to mature the note upon late payment of any installment or demand additional security. The bank chose to mature the note. A demand for additional security was not a condition precedent to foreclosure. We can see no abuse of right or breach of a contractual duty in CNB's exercise of this option.
The Girards also contend that, because the bank failed to make demand for payment or give notice that the note had been matured they had not been put in default and thus the note was not due. This position is not supported by the record. The collateral mortgage agreement signed by Mr. Girard waived demand and notice and allowed the Bank to foreclose on the pledged security without first putting PSH in default. Thus the Girard's contention that these omissions constituted a wrongful seizure is without merit.
We cannot see how CNB's exercise of its rights under the collateral mortgage constituted bad faith. Had they foreclosed solely on the basis of unsubstantiated rumors this claim would perhaps have merit. This however was not the case and we are unwilling to infer bad faith from the Bank's assertion of it's contractual rights.
Because CNB was within its rights by foreclosing on PSH's inventory based on late payments of the collateral mortgage note we cannot characterize the seizure of that inventory as wrongful. The illegality of the seizure is the `fault' which forms the basis of an action for wrongful seizure under C.C. Art. 2315. In the absence of a wrongful seizure there is no basis for a damage suit.
Moreover, except for their allegations that CNB was acting on the basis of unfounded rumor, the Girard's petition attempts to assert defenses to the use of executory process and not allegations of negligence or bad faith by CNB.
It is well settled that all defenses and procedural objections to an executory process proceeding are waived if the debtor allows the seizure and sale to proceed uncontested by either a suit for injunction or suspensive appeal. Reed v. Meaux, 292 So.2d 557 (La.1974) Alison Mortgage Investment Trust v. Commercial Leasing and Financing Co. Inc., 334 So.2d 705 (La.App. 3rd Cir.1976). Thereafter, defects of a substantive nature, such as a lack of authentic evidence, may be urged in a direct action to annual the sale if the property remains in the hands of the seizing creditor. Reed v. Meaux, supra. However if the property is in hands of a third party the debtor may use any defense, procedural or substantive, which he could have urged in the original proceeding as a defense to a suit by the creditor for a deficiency judgment. League Central Credit Union v. Montgomery, 251 La. 971, 207 So.2d 762 (1968).
In this case PSH failed to avail itself of the procedural protection which the law provides to debtors in an executory proceeding. Instead a petition for damages was *178 filed on March 6, 1983, more than a week before the scheduled sale. Thus it appears that the suit for damages was filed at a time when injunctive relief was still available to PSH.
In these circumstances we agree with the trial court that PSH waived any objections to the foreclosure proceeding by its failure to object to those proceedings in the manner mandated by CCP Art. 2642. As previously discussed we have reviewed the record of the foreclosure proceedings and find that they were properly conducted and that no wrongful seizure took place. We therefore affirm the dismissal of the damage suit.
Both judgments of the lower court are affirmed. All cost of this appeal are to be borne by the appellant.
AFFIRMED.
GARRISON, J., dissents with reasons.
GARRISON, Judge, dissenting:
It appears to me that a grave injustice has been done to the plaintiff in this case.
From the pleadings, the judge below has thrown out of courtunheeded and unhearda plaintiff who has been virtually plundered of his property. The defendant bank, in contrast, appears to have profited richly from its very own irregularities.
The plaintiff's petition for damages, well and fully pleaded, describes a raid on plaintiff's business of which Attila the Hun justly could be proud. The resultant stampede of creditors apparently made the permanent ruin of his substantial enterprise irreversible. The loss to plaintiff appears to have amounted to millions of dollars. Yet this entire disaster seems to have been initiated by the bank's precipitate over-reaction to a rumor which turned out to be untrue.
Are we really going to tell the plaintiff in such a case, one whose entire business has been destroyed and has come to the law for help, that he has "no right of action"?
The trial judge held that the plaintiff's damage suit can be regarded as nothing more than a technical collateral attack on the foreclosure proceedings. The aggrieved plaintiff has been told that he first should have danced through the ritual minuet of seeking an injunction or appealing suspensively, failing which Louisiana law will not hear his claim for damages. But the plaintiff's suit appears to me to be far broader than it was treated by the judge, far more than a mere procedural ploy.
The suit seeks recovery for the loss of plaintiff's ability to function commercially, for the loss of business reputation, for the violation of its ownership and property rights, for the breach of defendant's banking agreements with Plumbing Supply House and the violation of its fiduciary duties to Plumbing Supply House. The possibility of restitution for most of these losses addresses itself not merely to the procedural application of negotiable instruments law but more broadly to Civil Code Article 2315, the foundation upon which all tort law in Louisiana has been constructed.[1]
The cases apparently relied upon by the trial judge for his actions simply do not appear to be apt. In this case plaintiff seeks recovery of damages from the Century National Bank, not annulment of the sale of its inventory. Here, a judgment in the plaintiff's favor on the suit for damages would not affect the title of those persons who purchased the plaintiff's inventory at the Sheriff's sale.
Even if, in fact, the plaintiff's claim for damages could be limited to a collateral attack upon the original executory proceeding and a showing of defects in that proceeding, then the plaintiff nevertheless should have his opportunity to show the apparently pronounced ill practices and improper procedures employed by the defendant bank. Such actions, if their occurrence is confirmed by evidence, strike at the very foundation of executory process and should be brought out into the light of day.
*179 Article 2315 does not contemplate conditional responsibility and the duty to repair damage caused is not contingent upon conditions.[2] That Article should not be regarded as contemplating the requirement of contingent necessities (simply because executory process appears to have been the instrument of damage) such as first paying homage to injunction or annulment or suspensive appeal.
In the final analysis, Article 2315 is entirely Civil in origin, has no relation to the common law and derives none of its effect from it. Consequently it is not susceptible of interpretation on the basis of common law principles.[3] Yet that is precisely what the trial judge has sought to do in this case. The particular common law conditions which he would require in order for the plaintiff to have access to Article 2315 are the seeking of an injunction or a suspensive appeal.
The imposition upon Article 2315 of such contingencies are difficult for me to reconcile with Civil method. These "requirements" are not only patently of common law origin, with regard to their applicability to any tort action, but are essentially procedural in nature.
Thus, under Article 2315, the elements of a cause of action are fault (which embraces all conduct falling below a proper standard), causation and damage.[4] All tort liability in Louisiana arises exclusively from the delictual principles of the Civil Code articles governing offenses and quasi offenses (Civil Code Articles 2315 to 2324).[5]
In a State in which fact pleading replaces ritual, the question as to which door the plaintiff has entered should not be sacramental. To dispose of this case so casuallyin the face of apparent fault by the defendant and possible damages of millions of dollars to the plaintiffdoes not permit the full and balanced disposition for which such a case appears to cry out. Considering the clear applicability which I believe exists in the Civil Code, the judge below (and our majority opinion, as well) seems to be informing the plaintiff that "you may have a cause of action, but we have a little game we play which prevents us from hearing it."
I must dissent from any such capricious resolution. The plaintiff should have his day in court.
NOTES
[1] Hightower v. Dr. Pepper Bottling Company of Shreveport, Inc., 117 So.2d 642 (La.App. 2nd Cir.1959).
[2] Article 2315 does not contemplate conditional nor contingent responsibility. Marine Ins. Co. v. Strecker, 234 La. 522, 100 So.2d 493 (1958).
[3] Hightower v. Dr. Pepper Bottling Company of Shreveport, Inc., supra.
[4] Graci v. U.S., D.C.1977, 435 F.Supp. 189; Straley v. Calongne Drayage & Storage, Inc., 346 So.2d 171 (La.1977), on remand 350 So.2d 1231 (La.App. 4th Cir.1977); Weiland v. King, 281 So.2d 688 (La.1973).
[5] Guilyot v. Del-Gulf Supply, Inc., 362 So.2d 816 (La.App. 4th Cir.1978).