BARRY, Judge.
This consolidated appeal relates to the denial of Blueridge, Inc.’s request for a preliminary injunction in Whitney National Bank’s executory process action. Bluer-idge argues that Whitney’s petition for ex-ecutory process and its exhibits do not support executory process and claims:
(1)Whitney failed to include with its petition for executory process the 1990 corporate resolution of Blueridge, Inc.;
(2) Blueridge’s 1977 resolution fails to meet the specificity requirements for ex-ecutory process;
(3) Whitney failed to include a resolution authorizing its mandatory to execute the pledge agreement;
(4) Whitney did not establish that a pledge existed to connect hand notes to the initial collateral mortgage notes.
PROCEDURAL BACKGROUND
On July 2, 1991 Whitney filed a petition for executory process against Blueridge to seize and sell two properties which were collateral for loans made to Blueridge, Nelson Chatelain (Blueridge’s sole shareholder) and Chatelain’s wife. The district court ordered the properties seized and scheduled for sale. On July 29, 1991 Blueridge and the Chatelains filed a separate lawsuit for an injunction and damages. The actions were consolidated.
On September 26, 1991 Blueridge’s request for a preliminary injunction was denied. Blueridge then filed for a suspensive appeal and obtained an order which suspended the seizure. The sale was can-celled. Pursuant to Whitney’s Motion for Reconsideration, the trial judge converted the suspensive appeal to a devolutive appeal and Whitney rescheduled the sale.
One day before the sale Blueridge filed for Chapter 11 bankruptcy and the sale was cancelled. Whitney is pursuing an ordinary process action against Blueridge in federal court.
FACTS
Whitney loaned Blueridge and the Chate-lains money to develop real estate in Eastern New Orleans. On April 21,1977 Bluer-idge’s president and sole shareholder, Nelson Chatelain, executed Collateral Mortgage Note-A and Collateral Mortgage-A and pledged Collateral Mortgage Note-A to Whitney. Collateral Mortgage-A grants the holder of Collateral Mortgage Note-A a mortgage on a house owned by Blueridge at 7001 West Renaissance Court. Four demand promissory notes (“Blueridge Hand Notes”) are secured by Collateral Mortgage Note-A and Collateral Mort *904 gage-A. These documents were executed pursuant to a resolution of Blueridge’s board of directors which was passed on April 20, 1977. Whitney claims that Bluer-idge defaulted on the hand notes for a total of $154,680.68.
In late 1989 Whitney required Blueridge to provide additional security. On June 1, 1990 Blueridge executed Collateral Mortgage Note-B, Collateral Mortgage-B and a’ security agreement pledging Collateral Mortgage Note-B and
all property of Debtor of every nature and kind whatsoever, owned by Debtor, or in which Debtor has an interest, that is now or hereafter on deposit with, in the possession of, under the control of or held by Secured Party [Whitney] in definitive form, book entry form or in safekeeping or custodian accounts, including (a) all deposit accounts, money, funds on deposit in checking, savings, custodian and other accounts, instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, documents, documents of title and chattel paper. ...
Collateral Mortage-B grants the holder of Collateral Mortgage Note-B a mortgage on a vacant commercial tract at Bullard Avenue and Morrison Road. According to Blueridge, a Board resolution dated May 29, 1990 permitted Chatelain to execute the documents. Whitney rejected the resolution and submitted another resolution which tracked the language in the collateral mortgage note and the act of pledge. Blueridge secretary Carol Powell signed and certified the substitute resolution after the mortgage was executed.
Whitney continued to advance money through March, 1991 pursuant to the agreements. Whitney claims a default on fifty promissory notes (“the Chatelain Hand Notes”) in the amount of $2,358,-000.00 as of September 23, 1991.
7001 West Renaissance Court has been valued at $87,000 and the Bullard Morrison tract at $695,000.00 by an independent appraiser. The sale of those properties would satisfy less than one-third of the total debt.
Nelson Chatelain testified by deposition that he is the sole owner of Blueridge, Inc. He said Blueridge does not have a board of directors and has never had a board meeting. Chatelain stated that he had the authority to execute the collateral mortgages, the collateral mortgage notes, the hand notes, the security agreements and the pledge agreements on behalf of Blueridge. Chatelain admitted that he executed all of the documents which are attached to Whitney’s petition, including Collateral Mortgage-A and Collateral Mortgage-B. He is aware that his personal debts and the debts of Blueridge are cross-collateralized.
APPLICABLE LAW-Executory Process
La.C.C.P. art. 2635 requires that a petition for executory process include authentic evidence of:
(1) the note, bond or other instrument evidencing the obligations secured by the mortgage, security agreement, or privilege;
(2) the authentic act of mortgage or privilege on immovable property importing a confession of judgment.
If the mortgagor is a corporation, a corporate resolution authorizing its agent to execute the mortgage and mortgage note must also be attached to the petition. First Guaranty Bank v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834, 836, 838 (La.1987).
APPLICABLE LAW — Preliminary Injunction
In order to obtain a preliminary injunction, the alleged debtor must show that irreparable injury, loss or damage will occur if the injunction does not issue. La. C.C.P. art. 3601 et seq.; Hobbs v. Gorman, 595 So.2d 1264, 1266 (La.App. 4th Cir.1992). He must also make a prima facie showing that he will prevail on the merits. General Motors Acceptance Corporation v. Daniels, 377 So.2d 346, 348 (La.1979). The trial court has great discretion to determine whether a preliminary injunction should be granted. Absent a clear abuse of this discretion, the denial of a preliminary injunc *905 tion will not be overturned on appeal. Hobbs, 595 So.2d at 1266.
Clearly, Blueridge and the Chatelains will suffer irreparable injury, damage or loss if the injunction does not issue. Thus, the issue is whether the trial court abused its discretion by determining that Bluer-idge failed to make a prima facie showing that it would prevail on the merits.
REQUIREMENTS FOR EXECUTORY PROCESS

1990 Corporate Resolution

Blueridge argues that Whitney submitted a copy of the substitute resolution instead of the 1990 resolution.
Blueridge concedes that it provided Whitney with a corporate resolution authorizing Mr. Chatelain to execute Collateral Mortgage-B prior to his execution of the mortgage. Whitney sent Blueridge another resolution which tracked the language in the collateral mortgage note and the act of pledge. Carol Powell, the corporate secretary, signed and certified the second resolution after Chatelain executed Collateral Mortgage-B.
La.C.C.P. art. 2636 specifies the required support for executory process:
(4) A copy of a resolution of the board of directors, or other governing board of a corporation, authorizing or ratifying the execution of a mortgage on its property, certified in accordance with the provisions of R.S. 13:4103_
La.R.S. 13:4103 states: "... an extract of the minutes of the meeting of board of directors ... signed and certified by the corporate secretary ... setting forth the resolution or resolutions authorizing or ratifying the granting of such a mortgage or other security agreement....” is deemed authentic evidence for purposes of an exec-utory proceeding.
Both resolutions are excerpts from minutes of a meeting of the board of directors of Blueridge. Both resolutions gave Chate-lain the authority to execute Collateral Mortgage-B. Blueridge does not contend that Chatelain lacked authority to execute Collateral Mortgage-B. As noted, he was the sole owner of Blueridge. Blueridge only complains that Whitney cannot proceed via executory process because the second resolution was not passed at a board of directors meeting and was prepared after Chatelain signed Collateral Mortgage-B.
Blueridge’s argument has no merit. In Louisiana National Bank v. Heroman, 280 So.2d 362 (La.App. 1st Cir.1973), writ denied 281 So.2d 755 (La.1973), the defendant corporation argued that its resolution was insufficient to support executory process because it was signed two days after the collateral mortgage and note. The trial court found that the resolution was sufficient:
We cannot accept defendant’s contention that the corporate resolution must be prospective in nature and terminology so that unless a corporate resolution exists prior to the time of the execution of a note and mortgage, the payee or bearer of the mortgage note will not be able to resort to executory process, notwithstanding the presentation to the court at the time of instituting the executory proceeding of a resolution of the corporate mortgagor expressly ratifying the incur-rence of the debt and mortgaging of collateral therefore. The only purpose of the corporate resolution is to confirm the intent and willingness of the corporation to incur the obligation or indebtedness. The ‘authorization’ in that regard can be proven by authentic evidence of a corporate resolution to that effect, either prospective or retrospective in nature and terminology.
Id. at 369-370.
La.C.C.P. art. 2636 provides that a corporate resolution “authorizing or ratifying the execution of a mortgage” on corporate property is sufficient. (Emphasis added). Here, the intent was to incur the indebtedness since Chatelain was the corporation and Chatelain executed the collateral mortgage and collateral mortgage note. The resolution attached to the petition states: “All acts and things heretofore done by [Chatelain] are hereby ratified and approved.” The fact that the resolution *906 was certified after the date of execution of the collateral mortgage is immaterial.
Blueridge’s argument that the second resolution is invalid because it was not approved by Blueridge’s Board has no merit. Chatelain admitted there is no Board and he is the president and sole shareholder. A prior resolution authorized him to execute Collateral Mortgage-B and was signed and certified by the corporate secretary. The corporate secretary’s certification of the second resolution was not the basis to execute Collateral Mortgage-B and Collateral Mortgage Note-B; rather, it verified that the resolution was adopted on May 29, 1990. That fact is undisputed.
The resolution attached to Whitney’s petition clearly satisfies the requirements for executory process.
THE 1977 CORPORATE RESOLUTION
Blueridge argues that the 1977 Blueridge resolution fails to meet the specificity requirements of executory process and cites La.C.C. art. 2996:
A mandate conceived in general terms, confers only a power of administration.
* * * * * *
If it be necessary to alienate or to give a mortgage or to do any other act of ownership, this power must be express.
La.C.C. art. 2997 is also partially cited: A. Thus, the power must be express for the following purposes:
(1) To sell or buy.
(2) To encumber or hypothecate.
[[Image here]]
(4) To contract a loan or acknowledge a debt;
(5) To draw or indorse bills of exchange or promissory notes.
Blueridge did not refer to the second paragraph of Art. 2997:
The property or the location of the property need not be specifically described in any act of mandate required by this Article.
The 1977 resolution authorized Chatelain to:
... mortgage real estate owned by this corporation under a conventional mortgage ... for such amounts and on such terms and conditions as said officer may determine ... with full authority on the part of said officers to sign and execute any act or acts before any notary public, and said act or acts to contain such clauses, stipulations, and obligations as said officer may deem advisable, including confession of judgment, sale by executory process, waiver of ap-praisement, and the non-alienation clauses; with further authority to sign and execute any and all documents or deeds, notes and mortgage notes, building contracts, necessary or advisable to carry out fully the foregoing objects and purposes; ... (Emphasis added).
It also contains the following provision:
... the intent of this resolution being to place full authority with said officer to transact completely the business of this corporation as outlined in its charter, in which its objects and purposes are set forth, all without the necessity of the adoption by the Board of Directors of a separate resolution to cover each sale, purchase' or mortgage ... with further authority to do anything in the premises which may be necessary or advisable to carry out fully all or any of the purposes of this resolution.
Thus, the first resolution authorizes Chatelain to mortgage Blueridge’s property and to execute “notes, mortgage notes,” and acts confessing in judgment and consenting to sale by executory process. A collateral mortgage is recognized as a type of “conventional mortgage.” First Guaranty Bank v. Alford, 366 So.2d 1299, 1302 (La.1978). The omnibus provision at the end of the resolution reflects the intent of the corporation to allow Chatelain to transact all business for Blueridge and negates the necessity of a separate resolution to authorize each sale, purchase or mortgage.
The first resolution authorizes Chatelain, with specificity, to execute Collateral Mortgage-A and Collateral Mortgage Note A on Blueridge’s behalf.
*907 AUTHORIZATION FOR THE PLEDGE AGREEMENT
Blueridge claims that Whitney failed to include a resolution which authorized the pledge agreement.
La.C.C.P. art. 2635 does not require that a corporate resolution be attached to the petition. The jurisprudence requires a corporate resolution only from the corporation granting the mortgage—not from the bank that accepts the mortgage or mortgage note. First Guaranty Bank v. Baton Rouge Petroleum Center, Inc., 529 So.2d at 836, 838.
PLEDGE OF COLLATERAL MORTGAGE-A
Blueridge argues that there is no proof that a pledge existed to connect the hand notes to Collateral Mortgage-A. Blueridge states:
Whitney has failed to allege that the hand notes were pledged to secure the underlying indebtedness or that there was an intent to pledge the notes as security for that indebtedness.
Contrary to Blueridge’s premise, the hand notes are not pledged to secure the underlying indebtedness; the hand notes are evidence of that underlying obligation. The collateral mortgage note is pledged to secure the underlying indebtedness. See Baton Rouge Bank and Trust Co. v. Subco, Inc., 306 So.2d 312 (La.App. 4th Cir.1974), and Cameron Brown South, Inc. v. East Glen Oaks, 341 So.2d 450 (La.App. 1st Cir.1976).
Paragraph IX of Whitney’s Petition for Executory Process states that Blueridge “pledged Collateral Mortgage Note-A to Whitney, by delivery thereof, to secure the payment of all its indebtedness and obligations to Whitney.” Collateral Mortgage Note-A was pledged to Whitney on April 21, 1977 and Whitney has retained possession of the note.
All of the Blueridge and Chatelain hand notes are dated after April 21, 1977 and each hand note provides that:
all ... property that may now or hereafter be given or left in the possession of Whitney National Bank ... for any purpose by any party hereto, or any property belonging to any party hereto, that may come into the possession of said Bank, are hereby pledged and delivered to said Bank to secure the payment of this note.
The hand notes attached to Whitney’s petition were not required to be in authentic form and are not necessary for executory process. Slidell Building Supply, Inc. v. I.D.S. Mortgage Corporation, 273 So.2d 343 (La.App. 1st Cir.1972), writ denied 274 So.2d 708 (La.1973); First National Bank of Lafayette v. Gaddis, 250 So.2d 504 (La.App. 3rd Cir.1971).
A collateral mortgage note may be pledged by mere delivery. A written pledge agreement “is not an integral part of the evidence in support of the executory proceeding.” Pontchartrain State Bank v. Gross, 508 So.2d 901, 903 (La.App. 5th Cir.1987); Plumbing Supply House, Inc. v. Century National Bank, 440 So.2d 173 (La.App. 4th Cir.1983), writ denied 444 So.2d 1226 (La.1984). La.R.S. 9:4422 provides that the pledge of a negotiable instrument may enforce the mortgage securing that instrument by executory process without authentic evidence of the pledge. Because Collateral Mortgage Note-A was delivered to and retained by Whitney, the pledge of the note effectively secured the subsequent hand notes. See Plumbing Supply House, Inc., 440 So.2d at 176.
Roland W. Howell, Assistant Vice President of Whitney, states in his affidavit:
the Blueridge Hand Notes and Chatelain Hand Notes are secured by a pledge by Blueridge to Whitney National Bank of a Collateral Mortgage Note attached to the petition as Exhibit “P-1” (“Collateral Mortgage Note-A”), ... that the said Collateral Mortgage Note-A, described in Paragraph II of the attached petition, was paraphed for identification with an authentic act of Collateral Mortgage, ... (Exhibit “P-2”)....
We conclude that Collateral Mortgage Note-A was pledged and is valid security for the Blueridge and Chatelain hand notes.
*908 CONCLUSION
Whitney’s Petition for Executory Process and attachments satisfy the requirements for executory process.
Denial of the preliminary injunction is affirmed.
AFFIRMED.